**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| DELOIS GALLIEN, | ) | NO. CV 14-9805-E |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) | **AND ORDER OF REMAND** |
| Defendant. | ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a complaint on December 23, 2014, seeking review of the Commissioner's denial of disability benefits. The parties filed a consent to proceed before a United States Magistrate Judge on March 18, 2015. Plaintiff filed a motion for summary judgment on

June 29, 2015. Defendant filed a cross-motion for summary judgment on September 1, 2015.[1] The Court has taken the motions under submission without oral argument. See L.R. 7-15; "Order," filed January 12, 2015.

**BACKGROUND**

This Court previously remanded Plaintiff's disability claim for further administrative proceedings because of the Administration's failure properly to address the opinions of Plaintiff's treating physician, Dr. Arsen Hovanesyan. See Administrative Record ("A.R.") 551-62 (Memorandum Opinion and Order of Remand filed on October 1, 2012, in Gallien v. Astrue, CV 12-1246-E).

Plaintiff, a former home health aide, had asserted disability since September 30, 2008, based on alleged heart problems (A.R. 100-06, 120, 124, 143-44). Plaintiff had claimed that these alleged problems caused her to have shortness of breath and problems breathing (A.R. 143). An Administrative Law Judge ("ALJ") previously had found the existence of severe impairments consisting of a "history of congestive heart failure, status post mitral valve replacement, and low back pain" (A.R. 13). The ALJ also previously had found, however, that Plaintiff retained the residual functional capacity to perform Plaintiff's past relevant work (A.R. 13-16).

---

[1] The deadline for the filing of Defendant's motion was August 28, 2015. See "Order Granting Extension, etc.," filed July 29, 2015. In the future, Defendant and her counsel shall heed the deadlines ordered by the Court.

Plaintiff's treating cardiologist, Dr. Arsen Hovanesyan, had stated opinions classifying the severity of Plaintiff's symptoms according to the New York Heart Association ("NYHA") classification of functional heart limitations (A.R. 427-29; see also A.R. 554-62). These classifications connoted "slight" to "marked" limitations in physical activity (see A.R. 556). A person who has "marked" limitations suffers "fatigue, palpitation, dyspnea or anginal pain" from "less than ordinary activity" (id.). In denying benefits, the ALJ had not mentioned Dr. Hovanesyan's NYHA classifications (A.R. 11-17).

In previously remanding the matter, this Court held that the ALJ had erred by ignoring or implicitly rejecting Dr. Hovanesyan's opinions without articulating "specific, legitimate" reasons for doing so (A.R. 558). The Court also previously held that the ALJ had erred by failing to secure competent evidence that could translate the NYHA classifications into a residual functional capacity assessment (A.R. 559-61). Unable to find these errors harmless, the Court remanded the matter for further administrative proceedings (A.R. 558-62).

On remand, a new ALJ heard testimony from Plaintiff, a medical expert (Dr. Harvey Alpern), and a vocational expert (A.R. 496-514). Dr. Alpern described Plaintiff's medical condition as follows:

> In 2008, she underwent surgery for mitral valve replacement because she had a prolapsed mitral valve with severe mitral regurgitation and heart failure. She's been on heart failure medications ever since but her current ejection

>fraction is over 50 percent. Even so she's still taking the
>medications which is advisable because she also has poorly
>controlled hypertension. And she has diabetes, control is
>not clear. And she has GERD and she has bilateral shoulder
>pains and she has minimal degenerative disc disease. I do
>not think she meets or equals the listing. I find that she
>would be at a light [residual functional capacity] with
>further restrictions include [sic] such as no overhead
>lifting, occasional postural, no ropes or ladders.

(A.R. 502). In his testimony, Dr. Alpern did not mention Dr. Hovanesyan's NYHA classifications of Plaintiff's functional heart limitations. The vocational expert testified that a person limited as stated by Dr. Alpern could perform Plaintiff's past relevant work (A.R. 503).

The new ALJ found the existence of "severe cardiac, musculoskeletal and gastrointestinal impairments" but, unlike the first ALJ, found no severe congestive heart failure (A.R. 487). The new ALJ relied on certain of Dr. Alpern's opinions and on the vocational expert's testimony in finding that Plaintiff could perform her past relevant work (A.R. 486-91). The new ALJ (like the first ALJ) failed to mention Dr. Hovanesyan's NYHA classifications of Plaintiff's functional heart limitations (A.R. 484-91). The Appeals Council denied review (A.R. 472-74).

///
///
///

4

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner of Social Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

> If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. But the Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [administrative] conclusion.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and quotations omitted).

///
///
///
///

**DISCUSSION**

Once again, the Administration erred by failing to state "specific, legitimate" reasons for implicitly rejecting Dr. Hovanesyan's opinions. Once again, remand is appropriate.

**I.   Summary of the New Medical Records Concerning Plaintiff's Heart Condition**

Following the Court's remand, Plaintiff provided additional medical records from the Harbor UCLA Medical Center Cardiology Clinic, the Hubert H. Humphrey Comprehensive Health Center, and the Martin Luther King, Jr. Multi-Service Ambulatory Care Clinic (A.R. 626-54, 665-761).[2]

Plaintiff had regular cardiology office visits at Harbor UCLA from September 2011 through at least February 2013 (A.R. 669-74). On September 20, 2011, Plaintiff reported her exercise tolerance was limited to "slightly more" than her "ADLs" [activities of daily

---

[2]   Plaintiff's visits to the King Clinic primarily concerned her low back pain (A.R. 637, 642). An MRI showed lumbar spondylolisthesis, some disk protrusion and bulging, mild scoliosis, and facet osteoarthritis, for which Plaintiff was given a lumbar corset (A.R. 637-39).

Plaintiff's visits to the Humphrey Center primarily concerned her low back pain, shoulder pain, pain in the left side of her neck and in her left hand, and related issues (A.R. 690, 701-02, 714-15, 719, 722, 724, 727). In January of 2012, Plaintiff reported, among other symptoms, shortness of breath after walking half a block (A.R. 715). In February of 2012, Plaintiff had an esophogram and was diagnosed with "GERD" [gastroesophageal reflux disease] (A.R. 732, 735).

1  living] (A.R. 674).[3] Her doctor indicated that a "TTE" [transthoracic
2  echocardiogram] from April 2010 showed an "EF" [ejection fraction] of
3  55 to 60 percent, and "nml MVR" [normal mitral valve replacement]
4  (A.R. 674).[4] A doctor also noted "HA II," apparently referencing
5  Class II of the NYHA classifications connoting "slight" functional
6  limitations (A.R. 674; see also A.R. 555-56 (discussing NYHA
7  classifications)). Plaintiff was to continue with anticoagulation
8  treatment (A.R. 674).

10     On August 30, 2012, Plaintiff reported chronic complaints of
11 fatigue but also reported an ability to perform all activities of
12 daily living (A.R. 671). She also reported a two block walking
13 tolerance (A.R. 671). At that time, Dr. Kenneth Narahara opined that
14 Plaintiff had "stable functional tolerances" post mitral valve
15 replacement, and that there were no "sxs" [symptoms] of "CHF"
16 [congestive heart failure] (A.R. 671). Plaintiff was to continue
17 Coumadin (A.R. 671).

19     On February 1, 2013, Plaintiff reported that her exercise
20 tolerance was only one block, and she reported "slightly" increased
21 shortness of breath over the course of six months (A.R. 669). Dr.
22 Narahara apparently ordered a "TTE to evaluate gradients/valve" and

---

[3] The definitions for medical abbreviations and medical terms noted herein in brackets are derived either from the record as cited, or from a medical dictionary available online at http://www.medilexicon.com.

[4] In or about January 2008, doctors diagnosed, inter alia, congestive heart failure and atrial fibrillation (A.R. 235-36, 375-79). Plaintiff underwent mitral valve replacement on January 22, 2008 (A.R. 379).

1 continued Plaintiff's medications (A.R. 669). There is no evidence in
2 the record that any subsequent TTE took place.

4 Plaintiff visited the Harbor UCLA emergency room on March 12,
5 2013, complaining of chest pain radiating to her neck and her left arm
6 (A.R. 666-68, 692-96). She received morphine (A.R. 668). ECG studies
7 at this time showed atrial flutter and "variable block," but did not
8 disclose Plaintiff's ejection fraction (A.R. 667, 676-77). A chest x-
9 ray from this time showed atheroschlerotic disease within the aorta,
10 and some density in the left lung base, which may be related to
11 pleural effusion [increased fluid in the pleural space which can cause
12 shortness of breath by compression of the lung], or possible
13 atelectasis [loss of lung volume] (A.R. 678; compare A.R. 416 (chest
14 x-ray from April 2005 showing "normal" lung appearance and no evidence
15 of pleural disease)).

**II.  Dr. Alpern's Additional Testimony Concerning Plaintiff's Heart Condition**

20 After Dr. Alpern offered his opinion that Plaintiff would be
21 capable of performing light work, Plaintiff's counsel questioned Dr.
22 Alpern concerning the notations in the record of Plaintiff's shortness
23 of breath and limited walking ability (A.R. 509-10). Dr. Alpern
24 opined that Plaintiff's heart was not causing her shortness of breath
25 (A.R. 510). Dr. Alpern did not acknowledge Dr. Narahara's order from
26 February of 2013 for a new TTE to determine Plaintiff's ejection
27 fraction in light of Plaintiff's complaints of increased shortness of
28 breath. Nor did Dr. Alpern mention Plaintiff's March, 2013 chest x-

1  ray finding density in Plaintiff's lung.  Dr. Alpern purportedly could
2  find no cause for Plaintiff's shortness of breath except for
3  "deconditioning" (A.R. 511).

5      When questioned further, Dr. Alpern continued:

7      [T]he records shows [sic] that she's short of breath at one
8      block when she's asked. [] That's all I can say.  Is it
9      consistent with heart failure chronically?  No, unless she
10     shows heart failure but there is no heart failure. [] But
11     she's taking medications for it and that may be the reason.

13 (A.R. 511).  Dr. Alpern said there was "not quite enough" evidence in
14 the record for him to change his opinion regarding Plaintiff's
15 residual functional capacity (A.R. 512).  If a treating physician had
16 limited Plaintiff to sedentary exertion, Dr. Alpern "would not
17 quarrel" with such a limitation "too much" because Plaintiff was
18 taking Coumadin (which restricts her from working where she could fall
19 and hurt herself), so he would have no problem with a standing and
20 walking limitation (A.R. 512).  However, Dr. Alpern purportedly found
21 no need for such a limitation on the current record, which Dr. Alpern
22 thought pointed only to "deconditioning" as a cause of Plaintiff's
23 shortness of breath (A.R. 512-13).  Dr. Alpern was not asked about Dr.
24 Hovanesyan's opinions and did not volunteer anything regarding those
25 opinions.
26 ///
27 ///
28 ///

**III. The Administration Again Erred in Regard to Dr. Hovanesyan.**

Despite the directives contained in this Court's prior remand order, the new ALJ did not mention Dr. Hovanesyan's opinions, did not ask Dr. Alpern about those opinions, and evidently did not attempt to recontact Dr. Hovanesyan (A.R. 484, 487-90, 502-03, 509-13).

As the Court previously stated, a treating physician's conclusions "must be given substantial weight." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988); see Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989) ("the ALJ must give sufficient weight to the subjective aspects of a doctor's opinion. . . . This is especially true when the opinion is that of a treating physician") (citation omitted); see also Orn v. Astrue, 495 F.3d 625, 631-33 (9th Cir. 2007) (discussing deference owed to treating physician opinions). Even where the treating physician's opinions are contradicted,[5] "if the ALJ wishes to disregard the opinion[s] of the treating physician he . . . must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987) (citation, quotations and brackets omitted); see Rodriguez v. Bowen, 876 F.2d at 762 ("The ALJ may disregard the treating physician's opinion, but only by setting forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence") (citation and

---

[5] Rejection of an uncontradicted opinion of a treating physician requires a statement of "clear and convincing" reasons. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984).

10

quotations omitted).

The new ALJ (like the first ALJ) erred by ignoring or implicitly rejecting Dr. Hovanesyan's NYHA classifications without stating "specific, legitimate" reasons for doing so. See Lingenfelter v. Astrue, 504 F.3d 1028, 1038 n.10 & 1045 (9th Cir. 2007) (ALJ fails to articulate "specific, legitimate reasons" for treating physician opinions where the ALJ neglects to mention a treating physician's medical opinion that is relevant to the medical evidence being discussed); Carter v. Astrue, 308 Fed. App'x 75, 76 (9th Cir. Jan. 8, 2009) (ALJ's failure to mention treating physician's findings was erroneous in light of the ALJ's obligation to explain why significant probative evidence has been rejected) (citations omitted).

The ALJ's errors in failing to account for Dr. Hovanesyan's classifications may have been material. The residual functional capacity the ALJ adopted was based on certain of Dr. Alpern's opinions. Neither the ALJ nor Dr. Alpern addressed the classifications. There is no substantial evidence in the present record that the residual functional capacity the ALJ adopted is consistent with Dr. Hovanesyan's classifications.

**IV. Remand is Appropriate.**

Because the circumstances of the case suggest that further administrative review could remedy the ALJ's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); see also INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an

1  administrative determination, the proper course is remand for
2  additional agency investigation or explanation, except in rare
3  circumstances); Treichler v. Commissioner, 775 F.3d 1090, 1101 n.5
4  (9th Cir. 2014) (remand for further administrative proceedings is the
5  proper remedy "in all but the rarest cases"); Garrison v. Colvin, 759
6  F.3d 995, 1020 (9th Cir. 2014) (court will credit-as-true medical
7  opinion evidence only where, inter alia, "the record has been fully
8  developed and further administrative proceedings would serve no useful
9  purpose"); Harman v. Apfel, 211 F.3d 1172, 1180-81 (9th Cir.), cert.
10 denied, 531 U.S. 1038 (2000) (remand for further proceedings rather
11 than for the immediate payment of benefits is appropriate where there
12 are "sufficient unanswered questions in the record").

14     Contrary to Plaintiff's argument, it is not clear from the record
15 that the ALJ would be required to find Plaintiff disabled, or disabled
16 for the entire period of claimed disability, were the opinions of Dr.
17 Hovanesyan credited.  There is still no competent evidence expressly
18 translating Dr. Hovanesyan's opinions into a residual functional
19 capacity assessment.
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

**CONCLUSION**

For all of the foregoing reasons,[6] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: September 8, 2015.

/S/
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[6] The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that [Plaintiff] is in fact disabled." See Garrison v. Colvin, 759 F.3d at 1021.

13